# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:17 CV 287

| | |
|---|---|
| TONYA WILSON BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM |
| ) | AND |
| WEATHERSFIELD MANAGEMENT, ) | ORDER |
| LLC, *formerly known as* AccuForce Staffing ) | |
| Services, LLC, **and ACCUFORCE HR** ) | |
| **SOLUTIONS, LLC,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment (Doc. 26). The issues have been fully briefed, and the matter is ripe for ruling. For the reasons addressed below, Defendants' Renewed Motion for Summary Judgment is granted.

## I. Procedural Background

Plaintiff initiated this employment discrimination action on September 15, 2017 in the Superior Court Division of the General Court of Justice of Burke County, North Carolina. Defendants removed the case to this Court, and the parties consented to the jurisdiction of a United States Magistrate Judge. See (Doc. 7).

On July 11, 2018, Defendants filed their Motion for Summary Judgment (Doc. 16) and Brief in Support (Doc. 17). Plaintiff subsequently responded (Doc. 23), and Defendants replied (Doc. 24).

On August 28, 2018, Defendants' Motion for Summary Judgment was denied without prejudice. See (Doc. 25).

On September 11, 2018, Defendants filed the instant Renewed Motion for Summary Judgment (Doc. 26) and a supporting brief (Doc. 27). Plaintiff filed a memorandum in opposition (Doc. 28), and Defendants replied (Doc. 29).

On November 20, 2018, the undersigned conducted a hearing on Defendants' Motion. Plaintiff and her attorney, James B. Hogan, appeared, as did counsel for Defendants, Michael S. Lattier.

## II. Factual Background

For the purpose of Defendants' Motion, the facts are viewed in the light most favorable to Plaintiff. See Scott v. Harris, 550 U.S. 372, 380 (2007).

### A. Defendants' Business

The details of the relationship between the two Defendants, Weathersfield Management, LLC (formerly known as AccuForce Staffing Services, LLC) and AccuForce HR Solutions, LLC, are not entirely clear. At the hearing, Defendants' counsel indicated that a single individual had owned several companies which were later consolidated after bankruptcy proceedings. Further clarification was not offered, and defense counsel admitted that the companies' history was "confusing." See also Parsons Dep. (Doc. 28-1) 10-19. Nonetheless, Defendants appear to be closely related, and Defendants concede that Plaintiff was employed by one or both companies for purposes of her claims, see Defs.' Mem. Supp. (Doc. 27). Consequently, this Order will refer to both Defendants jointly as "Defendants" or the "Company."

Defendants operate as an employment agency, supplying employees to other companies. Parsons Dep. (Doc. 28-1) at 14; Compl. (Doc. 2-1) ¶ 9. Defendants conduct business in Tennessee, North Carolina, Virginia, and Kentucky. Parsons Dep. (Doc. 28-1) Dep. at 20; Fleenor Dep. (Doc. 28-3) at 13. The Tennessee region does the most business of any in the Company and is also the home of the corporate offices. Parsons Dep. (Doc. 28-1) at 20; Parsons Aff. (Doc. 27-1) ¶ 3.

**B.      Plaintiff's Employment**

On March 21, 2001, Plaintiff was hired as a Staffing Supervisor in Defendants' office in Morganton, North Carolina, which office is part of the Company's North Carolina region. Compl. (Doc. 2-1) ¶¶ 11, 20; Baker Aff. (Doc. 28-9) ¶ 2. Initially, Plaintiff was hired on a part-time basis, but by April 2, 2001, she was working full-time. Parsons Dep. (Doc. 28-1) at 49-50; Baker Aff. (Doc. 28-9) ¶¶ 3, 4. When Plaintiff's status changed to full-time, she was made a salaried employee. Parsons Dep. (Doc. 28-1) at 52.

In August of 2013, Defendants' owner passed away, and Dreama Parsons ("Parsons") assumed the role of COO, the most senior position in the Company. Parsons Dep. (Doc. 28-1) at 12, 21-22; Parsons Aff. (Doc. 27-1) ¶ 2.

At some point prior to 2014, Plaintiff became the Regional Manager for the Company's North Carolina region. Baker Aff. (Doc. 28-9) ¶ 6; Parsons Aff. (Doc. 27-1) ¶ 6. The Regional Manager position was one of the highest positions in the Company. Parsons Aff. (Doc. 27-1) ¶ 6.

In 2014 and 2015, the Company was struggling financially. Parsons Aff. (Doc. 27-1) ¶ 8. The Company lost several major customers, and the North Carolina region was a

3

financial drain on the Company. Parsons Aff. (Doc. 27-1) ¶ 8. In both 2014 and 2015, the North Carolina region's losses exceeded $100,000. Parsons Aff. (Doc. 27-1) ¶ 7.

Amid these problems, Parsons advised Plaintiff that the North Carolina region had to improve its sales in order to continue operations. Parsons Dep. (Doc. 28-1) at 59; Parsons Aff. (Doc. 27-1) ¶ 8. Parsons explained to Plaintiff that something had to happen to turn things around, or Parsons would have to "make a decision." Parsons Dep. (Doc. 28-1) at 60. Possible closure of the North Carolina offices was also discussed at managers' meetings. Parson Dep. (Doc. 28-1) at 65.

At some point between mid-summer and October of 2015, Plaintiff was named the Director of Risk Management for the Company, a position that was created for her. Baker Aff. (Doc. 28-9) ¶ 8; Parsons Aff. (Doc. 27-1) ¶¶ 9, 15.

Plaintiff held the Director of Risk Management position and the North Carolina Regional Manager position simultaneously, with no change in salary, until October of 2015, at which time she was removed from the Regional Manager position. Baker Aff. (Doc. 28-9) ¶ 8; Compl. (Doc. 2-1) ¶ 25; Baker Dep. (Doc. 27-2) at 87; Parsons Aff. (Doc. 27-1) ¶ 9.

The North Carolina Regional Manager duties were assigned to Kim Muncy ("Muncy"), who was a Regional Manager for the Company in Tennessee. Parsons Aff. (Doc. 27-1) ¶ 10; Baker Dep. (Doc. 29-1) at 87.

In November of 2015, the Company's Chief Financial Officer made it clear that something had to be done about the financial issues the North Carolina region was creating for the Company, and Parsons decided that a complete evaluation of the future and viability

4

of the North Carolina region should be undertaken. Parsons Aff. (Doc. 27-1) ¶ 11.

On January 8, 2016, the employment of three employees in the Morganton, North Carolina office was terminated: Plaintiff, Sarah Buchanan, and Lauren Klinck. Parsons Aff. (Doc. 27-1) ¶ 12; Compl. (Doc. 2-1) ¶ 27; Baker Aff. (Doc. 28-9) ¶ 10. At the time, Plaintiff was 40 years old[1], Buchanan was 47 years old, and Klinck was 29 years old. Parsons Aff. (Doc. 27-1) ¶ 12.

A subsequent evaluation by the Company revealed that there was adequate business in North Carolina, and that Plaintiff had failed over the course of the prior two years at managing customer relationships and building business. Parsons Aff. (Doc. 27-1) ¶ 14. These conclusions were confirmed when the North Carolina region turned a net profit of $180,000 in 2016 and a profit of $110,000 in 2017. Parsons Aff. (Doc. 27-1) ¶ 16.

### C. Plaintiff's Benefits Upon Termination

Plaintiff alleges that the Company had a policy or practice of paying terminated employees for unused vacation and sick leave. Compl. (Doc. 2-1) ¶ 44. Plaintiff further alleges that, as of the date her employment was terminated, she had accrued 4 weeks and 4 days of unused vacation and sick leave for which she should have been paid under this policy, but was not. Compl. (Doc. 2-1) ¶¶ 28, 44; Baker Aff. (Doc. 28-9) ¶ 19.

The Company counters that its paid time off policy, as of November of 2015, provided that upon termination, any unpaid time off would not be awarded to the terminated employee. Defs.' Mem. Supp. (Doc. 27) at 22-23. The Company also argues

---

[1] Plaintiff had turned 40 years old approximately 3 months before. Compl. (Doc. 2-1) ¶ 80; Baker Dep. (Doc. 28-2) at 8.

5

that, even if Plaintiff was entitled to be paid for her unused vacation and sick leave, she had accumulated essentially no paid time off. Id.

## III. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of some alleged factual dispute between the parties will not necessarily defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003). Rather, there must be a genuine issue of material fact. Dash v. Mayweather, 731 F.3d 303, 310-11 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

## IV. Discussion

Plaintiff's complaint includes the following claims: 1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; 2) age discrimination in violation of N.C. Gen. Stat. § 143-422.2 et seq.;[2] 3) wrongful

---

[2] A private statutory cause of action for employment discrimination does not appear to exist under North Carolina's Equal Employment Practices Act. However, as North Carolina law does recognize a claim for common law wrongful discharge in violation of public policy, with the Act as the basis for that public policy, Plaintiff's second claim will be considered as part of her claim

6

discharge in violation of N.C. Gen. Stat § 143-422.1 et seq.; and 4) violation of the North Carolina Wage and Hour Act, pursuant to N.C. Gen. Stat. § 95-25.1 et seq. See Compl. (Doc. 2-1).

### A. Plaintiff's Employment Discrimination Claims

The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff may prove unlawful age discrimination in two distinct ways. First, a plaintiff may set forth a prima facie case of age discrimination. Second, a plaintiff may offer direct or circumstantial evidence of an employer's discriminatory animus. Arthur v. Pet Dairy, 593 F. App'x 211, 216 (4th Cir. 2015). Under both methods, the plaintiff bears the burden of proving that his or her age was the but-for cause of the adverse employment action. Id. (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 178 (2009)).

To make out a prima facie case, a plaintiff must demonstrate (1) she was a member of a protected class; (2) she was performing her job duties to her employer's legitimate expectations when she was terminated; (3) she was terminated; and (4) she was replaced by a substantially younger individual. Id. at 216-17 (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated in part by

---

for wrongful discharge. See Carmon v. Pitt Cty., No. 5:18-CV-433-D, 2019 WL 938875, at *4 (E.D.N.C. Feb. 26, 2019)

Gross v. FBL Fin. Servs., Inc. 557 U.S. 167 (2009)).

North Carolina courts "look to federal decisions for guidance in establishing evidentiary standards and principles to be applied in discrimination cases." Johnson v. Crossroads Ford, Inc., 749 S.E.2d 102, 110 (N.C. Ct. App. 2013) (quoting Youse v. Duke Energy Corp., 614 S.E.2d 396, 401 (N.C. Ct. App. 2005) (quotations omitted) (citing Dept. of Corr. v. Gibson, 301 S.E.2d 78, 82 (N.C. 1983)). Therefore, Plaintiff's state law claim for wrongful discharge may also be analyzed under this framework.

### 1. Prima Facie Age Discrimination

Defendants argue that Plaintiff has failed to offer direct or circumstantial evidence of discrimination based on her age, and therefore she must rely on establishing a prima facie case. Defs.' Mem. Supp. (Doc. 27) at 14. Plaintiff appears to concede this point by arguing that she has met her burden of establishing a prima facie case. Pl.'s Mem. Oppos. (Doc. 28). at 15.

As for a prima facie case itself, Defendants argue that Plaintiff fails to establish two of the four elements: (a) that she was performing her job duties in accordance with Defendants' legitimate expectations at the time of her termination; and (b) that she was replaced by a substantially younger individual. Defs.' Mem. Supp. (Doc. 27) at 14.

#### a. Element 1: Protected Class

Defendants concede that Plaintiff fits within the protected class, though by a mere three months. Defs.' Mem. Supp. (Doc. 27) at 14; see also Bodkin v. Town of Strasburg, Va., 386 F. App'x 411, 413-14 (4th Cir. 2010) (per curiam) (noting that the protected class is 40 years old or older).

### b. Element 2: Employer's Legitimate Expectations

Under the second element of a prima facie case, "whether an employee met his employer's legitimate expectations at the time of termination depends on the perception of the decision maker . . ., not the self-assessment of the plaintiff." Jones v. Constellation Energy Projects & Servs. Grp., Inc., 629 F. App'x 466, 469 (4th Cir. 2015) (internal quotation marks omitted). An employer's expectations are not legitimate if they are merely a "sham designed to hide the employer's discriminatory purpose." See Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 518 (4th Cir. 2006) (quoting Brummett v. Lee Enterprises, Inc., 284 F.3d 742, 745 (7th Cir. 2002)). "[I]t is the plaintiff's burden to persuade the trier of fact that he met his employer's legitimate subjective employment expectations[.]" Arthur, 593 F. App'x at 217 (citing Warch, 435 F.3d at 515-16).

A legitimate business decision need not be the "primary" reason for the employee's termination. Id. at 222. Rather, the employee's burden is "to show his age was the but-for cause of the adverse employment action---a necessary logical condition for his termination." Id.

In this case, as Regional Manager, Plaintiff held the highest position in the North Carolina region and one of the highest positions in the Company. Parsons Aff. (Doc. 27-1) ¶ 6. Parsons testified that a Regional Manager generally manages staff for the region, and is responsible for generating sales, making sales calls, and performing other functions of a leader of the region. Parsons Dep. (Doc. 28-1) at 54.

During her deposition, Plaintiff acknowledged that as Regional Manager she was responsible for the overall financial performance of the North Carolina region. Baker Dep.

(Doc. 27-2) at 73. Plaintiff also admitted that throughout 2015, the region consistently showed a net loss. Baker Dep. (Doc. 27-2) at 72. Further, Plaintiff conceded that the profitability of the North Carolina region could have been a motivating factor in her termination. Baker Dep. (Doc. 27-2) at 12.

In a separate affidavit, Plaintiff states that she did not have the authority to hire or fire employees, change office locations, shut down or open an office, change workers' compensation carriers, change health insurance coverage for the staff, or take any other action that affected expenses without Parsons' approval, and that she lacked control over a Management Fee that was assessed by the corporate office. Baker Aff. (Doc. 28-9) ¶¶ 7, 11. Other evidence does indicate that Parsons employed various expense-reduction measures relative to the North Carolina region in 2015. Fleenor Dep. (Doc. 27-4) at 64; Parsons Dep. (Doc. 27-3) at 11.

This testimony, however, does not create a dispute of material fact with regard to the second element of the prima facie test. It does not contradict Plaintiff's admission that she was responsible for the overall financial performance of the North Carolina region, the undisputed evidence about the financial struggles experienced by the North Carolina region during the last two years of Plaintiff's tenure as Regional Manager, or the notice given to Plaintiff by the Company's management that sales in her region had to be increased or a decision would have to be made. See Warch, 435 F.3d at 514-15 ("[T]he prima facie case requires the employee to demonstrate that he was 'qualified' in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job

performance, absolute or relative.").[3]

Consequently, there are no genuine issues of material fact with respect to this element.

### c. Element 3: Termination

It is undisputed that Plaintiff's employment with the Company was terminated.

### d. Element 4: Substantially Younger Replacement

#### i. Director of Risk Management

The evidence indicates that after Plaintiff's employment ended, the position of Director of Risk Management was eliminated. Parsons Aff. ¶ 15. Plaintiff has offered no evidence to the contrary. Plaintiff's risk management job duties, themselves, were assigned to an employee who was 49 and older than Plaintiff. Parsons Aff. (Doc. 27-1) ¶ 14.

#### ii. North Carolina Regional Manager

Plaintiff was removed as North Carolina Regional Manager in October of 2015, at which point the duties for that position were assumed by Muncy, who was a Tennessee Regional Manager. Baker Dep. (Doc.29-1) at 9. Muncy is older than Plaintiff. Parsons Aff. (Doc. 27-1) ¶ 6.

Plaintiff argues that Paris Hooke ("Hooke"), who was approximately 29 years old at the time of Plaintiff's termination, was made the acting head of the Morganton office

---

[3] While Plaintiff held the position of Director of Risk Management at the time her employment was terminated, it appears that her performance as North Carolina Regional Manager is most relevant for purposes of this element. The evidence indicates that the risk management position was created for her, that she was in the position for a relatively short time, and that the position was subsequently discontinued.

11

shortly after Plaintiff's termination. Baker Aff. (Doc. 28-9) ¶ 12. Plaintiff claims to know this because when she returned her work supplies about a week after her termination, Plaintiff returned them to Hooke. Compl. (Doc. 2-1) ¶ 82; Baker Aff. (Doc. 28-9) ¶ 14. Plaintiff has not, however, submitted evidence indicating that Hooke, as opposed to Muncy, followed Plaintiff as North Carolina Regional Manager.

Consequently, there are no genuine issues of material fact with respect to this element.

### 2. Legitimate, Non-Discriminatory Reasons for Termination

If a plaintiff makes out a prima facie case of age discrimination, "he creates a presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision." Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods.,Inc., 530 U.S. 133, 142 (2000)). If the defendant states such a reason, "the presumption disappears[,] and the plaintiff must show that the articulated reason is a pretext for age discrimination." Id. (citations omitted).

"[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge." Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999) (quotation omitted).

In the instant case, as discussed above, Plaintiff has failed to make out a prima facie case for discrimination.

In the alternative, even if Plaintiff had made such a showing, Defendants have

articulated legitimate, non-discriminatory reasons for their adverse employment decision. Plaintiff's termination followed two years of negative financial performance by the region she oversaw. Further, it reflected the Company's financial inability to maintain Plaintiff solely in the position of Director of Risk Management. Parsons Aff. (Doc. 27-1) ¶¶ 7, 8, 11, 14. See Birkbeck v. Marvel Lightning Corp., 30 F.3d 507, 513 (4th Cir. 1994) (The "ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges.")

Similarly, Plaintiff has failed to demonstrate that the reasons articulated by Defendants are pretextual. Plaintiff has not asserted that the reasons articulated by Defendants are false. See Pl.'s Mem. Oppos. (Doc. 28). In addition, the Company retained similarly-situated employees who were the same age as or older than Plaintiff. For example, Defendants retained two employees who also served as Regional Managers, both of whom were over age 40 and older than Plaintiff. Parsons Aff. (Doc. 27-1) ¶ 6. Also, Plaintiff's risk management job duties were assigned to an employee who was 49, and older than Plaintiff. Parsons Aff. (Doc. 27-1) ¶ 14.

In essence, while it is undisputed that Plaintiff was 40 <u>when</u> her employment was terminated, Plaintiff has not put forth evidence from which a reasonable jury could conclude that her employment ended <u>because</u> she was 40. As a result, there are no genuine issues of material fact concerning Plaintiff's age discrimination claims, and Defendants are entitled to judgment as a matter of law.

**B.** **Plaintiff's Wage and Hour Claim**

Plaintiff's ADEA claim provided a basis for this Court's original jurisdiction over

13

this matter. With the dismissal of that claim, the Court's original jurisdiction is now gone. It appearing that Plaintiff's remaining state law claim under the North Carolina Wage and Hour Act does not implicate issues of federal policy, the Court will decline to exercise continuing supplemental jurisdiction over it. <u>See</u> 28 U.S.C. § 1367(c) (providing that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction.").

**IT IS THEREFORE ORDERED THAT:**

1. Defendants' Renewed Motion for Summary Judgment (Doc. 26) is **GRANTED** and that:

   a. Plaintiff's claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 and under North Carolina state law for age discrimination in violation of N.C. Gen. Stat. § 143-422.2 et seq. and for wrongful discharge in violation of N.C. Gen. Stat § 143-422.1 et seq.; are **DISMISSED WITH PREJUDICE**; and,

   b. Plaintiff's claim under the North Carolina Wage and Hour Act, pursuant to N.C. Gen. Stat. § 95-25.1 et seq. is **DISMISSSED WITHOUT PREJUDICE**.

2. The Clerk is respectfully **DIRECTED** to remove this case from the undersigned's trial calendar and close the case.

Signed: March 26, 2019

*[signature]*

W. Carleton Metcalf
United States Magistrate Judge